My name is Wendy Holton and I represent Mr. Stamper. The only issue in this case was whether Mr. Stamper knew that Kay was physically incapable of declining consent. But that's not how the jury was instructed. The jury was instructed only that he had to know that he was having sex with her and that she was incapable of declining consent. In fact, in this case, the jury was specifically told that the government was not required to prove that he knew his acts or omissions were unlawful. In essence, under the facts of this case, a verdict was directed against him. To request the appropriate jury instruction in this case, Stamper's trial counsel did not have to anticipate a change in the law. Nor did the Eighth Circuit cases of Brugere and Rilliard add an element to the offense of sexual assault. Had his counsel heeded the admonition contained at the beginning of the pattern jury instructions of this court, he would have seen the admonition that they are not mandatory and must be reviewed carefully before use in a particular case. So if he had requested a modification of the instruction, what authority would he have cited at that time? He could have cited actually a plethora of United States Supreme Court precedent. He could have gone to the rules. In particular, a case where the statutory, the statute at issue was very, very similar to the structure of the statute in Stamper's case, an excitement video. That statute is set out at page four of my reply brief, that the structure of that statute is almost exactly the same as the structure in Stamper's case. And there the court held, relying on even older than 1994 cases, Morissette, reinforced by Staples, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct. So the Supreme Court said that in Staples in 1994, right? And then in Flores-Fergueroa, it cited, which is 2009, I think it's also before your case, it cited excitement video. Courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word knowingly as applying to each element, right? Yes. Okay, so he could have cited these authorities from the United States Supreme Court and said we need this element read in to our jury instruction, but he didn't do that. That's correct. Since this time, our case, our court has come down with additional case law that says that that's not an element, right? No, Your Honor. Well, we have in a statute that's almost identical. But in the case that I believe that you're referring to, Juan Pablo Price, in that case there is a footnote that specifically says we're not saying that Brugere isn't controlling here. We're just saying that the penalty isn't such that it can't essentially be that the rules of excitement video and Flores-Figueroa apply. I'm going to disagree with you about that, or if I do. I'm not sure it matters today. Here's my problem. Are you aware that we have potential en banc activity pending on this issue? I am not. Okay, just take that as a hypothetical. If we have pending en banc activity on this issue in this case, does that mean we should hold this case, or what should we do? If we're grappling with the question about whether or not the defendant's awareness of her incapacity should be an element, is that going to be outcome determinative here? Yes. I mean, if the knowingly element applies to her inability to consent, or not to consent actually isn't an issue, her inability to decline participation, then the instruction on that is determinative. So just to be clear, we're talking about, I don't think there's any question he knowingly engaged in sexual conduct, right? Which is not normally an illegal activity. Not normally an illegal activity, and for purposes of my hypothetical, I'm going to say that in this case it was uncontested that she was not capable of consenting. Your position in that hypothetical world would be that this statute still requires the jury to find that he knew she was incapable of consenting. That's what we're talking about, right? Yes, and especially under the facts of this case where there was a lot of evidence that she, even though she said, I was blacked out, nobody else was seeing that. Okay, so blacked out as in blacked out, not passed out. Blacked out as in walking, talking, but has consumed so much alcohol she's not recording memories. That's what we're talking about. Right, and that's essentially what the medical people said they saw. Okay, so we're talking about ineffective assistance of counsel. Right. And he didn't do any research. He's testified to that. So the case, this United States Supreme Court case that you're citing, he didn't find, he didn't cite, he didn't argue for any variation? He did not. Did he have any other defense that he was running at this trial? He, interestingly enough, he didn't even identify this as a defense connected to that element. He sort of did. He said it was a consent defense, but lack of consent is not an issue under this statute. It's whether the person is incapable of declining participation, which is a little bit different. There's some evidence of an investigative witness who testified that the defendant claimed the victim consented. So consent was a defense, was it not? What he said, I mean, what Stamper's position is, is that he could not possibly know that she was incapable of declining consent because she was not only walking and talking, she was sexually aggressive toward him. There's another witness who testified she passed out, passed out, not blacked out, and that Ronnie, and that he carried her to a back bedroom. So this was a disputed trial. Right, but there's also her own testimony contradicts Ronnie and Marlene's because she said, I was kicking and screaming, and then she gives a very detailed description of what happened after Ronnie and Marlene came in. Well, she says that she remembers drinking. Right, and then she blacks out, and then she woke up, and Mr. Stamper was on top of her. Right. Ronnie says that she passed out, and he carried her to a back bedroom before leaving to go get more alcohol. And then a police officer or an FBI agent testified about the statement your client gave that night, which is very different. He says it was all consensual, and she walked back under her own steam. So the jury had to resolve all of that. And I want to add one fact to what you said. When she said, I woke up and he was on top of me, and then I was kicking and screaming, Ronnie and Marlene said when we walked into the room, she was a dead limb. Those are two completely different things. Yes, but those are all for the jury to decide. Right, right. We're just talking about as a matter of law whether or not the jury needed to be instructed that he had to know that she lacked consent. Exactly. So my question is, did he have any, and this is what Judge Bea, I think, was getting at, too. It seems to me in the deposition of defense counsel, this was his defense. Did he have another defense? Well, he couched it as consent. As opposed to awareness of lack of consent. And so, I mean, he wasn't, I mean, it just goes further to his failure to carefully examine the statute he was dealing with. Okay, thank you. I'll reserve my time. Good morning, Your Honors. May it please the Court. My name is Jessica Bentley, and I represent the United States. Going, Judge Christin, to your question first, about if this Court were to consider the issue of whether a defendant has to know that the victim was incapable of consent or could not convey that consent to the defendant, I do not believe a ruling in that is determinative in this case here today. Because the ultimate issue here is whether counsel was ineffective, provided ineffective assistance of counsel back in 2011 when this trial took place, and then also on appeal, which carried through 2012 and was ultimately decided in February of 2013. Now, this Court can affirm the District Court and also deny Stamper's claim on two separate ways here, either first under the first prong of Strickland, the objective standard of reasonableness, as well as under the prejudice prong. Because if this instruction had been presented to the jury, there is no indication or no reasonable probability that the outcome would have been different here. Because Stamper's defense was consent. Let me ask you this. The last question that Judge Christin asked, and now you've hit on it. Was there any evidence presented by Stamper that he was unable to perceive whether the victim consented or not? I don't believe so. He didn't testify, right? He did not testify. Did anybody else testify that he was under some sort of condition, which made it impossible for him to appreciate whether she consented or whether she didn't? Your Honor, there was actually very strong evidence presented to the jury through Stamper's statement that he made to the FBI agent, who did testify at trial. Now, see, when Stamper, when the FBI agent initially spoke with Stamper following this offense, a couple days after, Stamper immediately locked himself into a story. His defense was cemented at that time. Because his defense was that the victim consented. Not only that, but she was aggressive towards him. Correct, Your Honor. Now, this story was very specific.  Well, actually, I apologize. Ryan Stump had left, which had left the defendant, Mr. Stamper, and the victim home alone. No one else was there. That is contradictory to all the other witnesses that testified at trial. He said that then she said, hurry up, come with me, which he interpreted as being the sexual aggressor, to go back to the bedroom. At that point, he says they had consensual sex. But Stamper even goes a point further and states he knew how actually intoxicated she was. The FBI asked, you know, on a scale of 1 to 10, with 1 being the least amount of intoxicated, with 10 being the most intoxicated, how intoxicated was the victim. And he said an 8. He even compared himself in intoxication levels to the victim and even the other witnesses and said he was less intoxicated. And so this directly goes to whether the defendant knew that the victim was incapacitated, that she could not communicate an unwillingness to engage or was physically incapable. And that was all presented to the jury. And, again, the government's position is that you can deny his claim on the objective reasonableness prong, but also you don't even need to come to that conclusion. You can deny his claim on the prejudice prong because there is no reasonable probability that the result of this trial would have been different, given the defense that Stamper cemented himself into when he spoke to the FBI agent and what was presented. And, again, the jury considered all of that. They listened to completely contradictory stories of the other witnesses, including the victim who said, May I interrupt you right here because you're going to give us some really important facts, I think, and I want to make sure I'm understanding. Was everybody drinking? Yes. Everyone was drinking. Okay. And, okay, I'll get out of your way then and listen. Go ahead. No, and please, please ask. I will. Go ahead. Go ahead. Everyone had been drinking. And the witnesses that testified, Ronnie Stump and Marlene Yupi, they left the house. That is that portion of time where they leave the house to go find more alcohol. And they were gone for a while, right? It must have been 30, 45 minutes because they went, they went to a convenience store, they got stuck in a ditch, you know, that whole sequence. I don't want to take up your time, but they must have been gone an appreciable period of time. Correct, Judge. Okay. And then the other thing that was confusing, there's two Ryans. It took me a while to figure that out. So, actually, my clerk figured that out. He's watching right now. I want to give him credit. So there's two Ryans, right? Correct. And one's a cousin. Can you give me that? Ryan Stump is a cousin. The testimony from all of the witnesses besides the defendant was that he was also very intoxicated. He passed out, I believe, on a chair or on the floor in the living room. So I'm trying to keep track of the two Ryans because there's this discrepancy about whether they all left or not. Ronnie and Marlene left. Where are the two Ryans? Ryan Sangre was the other witness. It is a little unclear. He did not testify at trial. But I think he left to go get more alcohol, but he didn't come back. Is that right? That's correct. He left as well, and somewhere in between the car and the ditch, he did not return to the house. Okay, and, again, I don't mean to belabor the point, but I tend to belabor these points. When they came back, it's Ronnie and Marlene that go to the back bedroom. Ronnie decides he's going to go check on his cousin. Okay. So our other Ryan is missing in action. Is he passed out somewhere or he's not part of the he didn't go back to check? That was the concern when Ronnie and Marlene returned to the house after getting dropped off was they did not see Mr. Stamper. But Ryan, Ronnie's brother, was still passed out on the floor. And so that's when the concern came of, oh, my gosh, where is Mr. Stamper? N.K. N.K., correct. And at that point, they go to the back bedroom. And it is telling that the jury. Sorry, they meaning Ronnie and Marlene, or did they wake up Ryan? Ryan, from my understanding, was still passed out on the ground. But then they went back to wake him up. Okay. There is a discrepancy when they get to the back bedroom, and I think it's just the two of them, Marlene and Ronnie. Yes. About turning on the light and seeing. What about that discrepancy? Opposing counsel mentioned that. They say the witnesses standing in the doorway, I think, say that she's limp, as in passed out, and she describes it differently. Yes. Ronnie's testimony is that once he did not see Mr. Stamper and Ryan, his brother, is still passed out on the floor, he immediately goes back and he describes Mr. Stamper as having sex with a dead limb, that the victim was completely unresponsive, her eyes were closed, no movement whatsoever, and that he was engaged in a sexual act with her. At that point. And the lights are out. The lights were out. Yes. And so if the jury had been instructed that you have to make a finding, whether he knew that she was incapable of consenting, I guess the best they could argue is that she went back there under her own steam and at some point in this sexual act that she passed out, went from blacked out condition to passed out condition.  Your Honor, I believe the evidence still was that she had blacked out or was essentially asleep in the living room, and at that point they carried her to the back bedroom. Well, except for the defendant's testimony, which is that she, or, you know, he didn't testify. His version of events is that she walked back there. Did Ronnie and the other, oh, Ronnie said he carried her back there. Were the other witnesses asked about whether she walked back or whether Ronnie carried her back? I believe they were, including Marlene Yupi's testimony. She said that Marlene Yupi said that Ronnie had carried the victim to the back bedroom. Okay. And she also had stated, Marlene, and that is at volume three, page 265 and 267, that the victim was really drunk and passed out hard in the living room. Did you say 65 and 67? 265 and 267 of volume three. Thank you. That's very helpful. Thank you. And actually at page 37 of volume three, Marlene specifically said that Ronnie picked her up and took her to the back bedroom. Except she also said she was blacked out, so she wouldn't know that unless she had been told that, right? That's my difficulty with – I'm sorry, did you say Marlene or Kay? Marlene said that. Oh, okay. Forgive me. Okay. Yes. All right. Thank you. And then the government's position is that the victim's testimony is supported by the extrapolation, the blood extrapolation evidence taken later. So that all there goes to the second prong of Strickland, the prejudice, that there is no reasonable probability that the result would have been different because the defendant – this was presented to the jury, that the defendant subjectively knew, that he knew that the victim was incapacitated. Now, if the jury – Whether she was blacked out or passed out or not, that she was an 8 out of 10, is that the government's argument? Yes, Your Honor. Thank you. And again, to remember that the Sixth Amendment here – the Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. And I wonder if I can use just a moment of the remaining time to touch on the first prong, but if you look at the cases that were available to counsel in 2011 to 2013, including going into Brugere, he does not have to have a crystal ball. He does not have to – it is not ineffective assistance to predict some change in the law. His – But this wasn't a change in law, though. That's her argument, that Staples and the earlier case law was out there from the United States Supreme Court. The district court relied on prong one. It's just I'm asking you questions about prong two because prong one sounds pretty sticky to me. What's your best shot on prong one? Your Honor, the government's position on prong one is, given that the model instruction in 2011 that counsel used is still the same model instruction today, that has not changed. In fact, there has not been a change in the law. And the Court is correct that law that existed in 2011 is still the same today in the Ninth Circuit. We do have the case of Brugere out of the Eighth Circuit, which has gone contrary. But given this Court's opinion in Price, that appears to be contradictory to the Eighth Circuit. And my last point with the – applying the knowing standard to every element, this Court and Judge Wardlaw's very well-reasoned opinion in Price states, we have explicitly rejected the notion that the Court's reading of knowingly in Flores v. Herrera compels the same reading in every criminal statute that uses the word knowingly. That has to be evaluated independently here in this circuit of 2242 2b. And that question is still unsettled, which comes to the conclusion and the government's position that counsel was not ineffective in 2011. Thank you. Thank you, Your Honor. Since the Price decision, the United States Supreme Court has – it's in my reply brief and I'm having a hard time finding it right now. But the United States Supreme Court has talked about – I think has made my point in spades on the knowingly element in Rehaf v. United States, where they very clearly applied the knowingly element and basically said there's this plethora of case law out there. This is well-settled law. So I think that they have answered that question. What's your best prong to argument? On the issue of prejudice, the jury instructions in this case substantially lowered the government's burden of proof and essentially directed a verdict against Mr. Stamper. Without the correct instruction, he didn't have a defense. With the correct instruction, the jury could have found what the evidence showed. But Mr. Stamper didn't take the position that he was unable to perceive that the victim was unable to grant consent. He never took that position. He took the position that she aggressively consented. So then how was he prejudiced by the failure of an instruction that – for a position he didn't take? If he didn't – if she was sexually aggressive toward him, how could he know that she was incapable of consent? No, he would have thought she is capable of consent. How would she – That was his defense. But he never took the position, I was so drunk, I couldn't tell that she was not able to consent. He never took that position. No, he – his position was he did not know that she was incapable of declining consent because of her actions. Oh, come on. Next. All right. The case of USA v. Stamper is submitted for decision. And the Court thanks counsel for their argument.
judges: Farris, Bea, Christen